UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELL SEMICONDUCTOR, LLC,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>MAXLINEAR, INC.,<br><br>　　　　　　　　　　　Defendant. | Case No.: 22-cv-01178-H-KSC<br>Consolidated for Pretrial Purposes with<br>Lead Case No.: 22-cv-00594-H-KSC<br><br>**ORDER DENYING DEFENDANT MAXLINEAR'S RULE 12(b)(6) MOTION TO DISMISS**<br><br>[Doc. No. 14.][1] |

On November 10, 2022, Defendant MaxLinear, Inc. ("MaxLinear") filed a motion to dismiss Plaintiff Bell Semiconductor, LLC ("Bell Semic")'s first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. No. 14.) On November 28, 2022, Bell Semic filed a response in opposition to MaxLinear's motion to dismiss. (Doc. No. 15.) On December 5, 2022, MaxLinear filed a reply. (Doc. No. 17.) The Court, pursuant to its discretion under Civil Local Rule 7.1(d)(1), determines the matter is appropriate for resolution without oral argument and decides the motion on

---

[1] All citations in this order are to the docket in <u>Bell Semiconductor, LLC v. MaxLinear, Inc.</u>, No. 22-cv-1178-H-KSC, unless otherwise noted.

1

the parties' papers. For the reasons below, the Court denies MaxLinear's motion to dismiss.

## Background

Bell Semic alleges that it is the owner by assignment of U.S. Patent Nos. 7,007,259 ("the '259 Patent") and 6,436,807 ("the '807 Patent") (collectively "the patents-in-suit"). (Doc. No. 11, FAC ¶¶ 22, 31.) In the present action, Bell Semic alleges that MaxLinear directly infringes the patents-in-suit, either literally or under the doctrine of equivalents, by using the methodologies claimed in the patents-in-suit to design one or more semiconductor devices, including for example its XR9240 Compression and Security Coprocessor chips. (Id. ¶¶ 1, 43-48, 56-62.)

The patents-in-suit generally relate to various aspects of semiconductor design and manufacturing. The '259 Patent is entitled "method for providing clock-net aware dummy metal using dummy regions" and was issued on February 28, 2006. U.S. Patent No. 7,007,259, at [45], [54] (issued Feb. 28, 2006). The invention disclosed in the '259 Patent "relates to methods for patterning dummy metal to achieve planarity for chemical-mechanical polishing of integrated circuits, and more particularly to a dummy fill software tool that provides clock-net aware dummy metal using dummy regions." Id. at col. 1 ll. 7-11.

Independent claim 1 of the '259 Patent claims:

> 1. A method for inserting dummy metal into a circuit design, the circuit design including a plurality of objects and clock nets, the method comprising:
>
> > (a) identifying free spaces on each layer of the circuit design suitable for dummy metal insertion as dummy regions; and
>
> > (b) prioritizing the dummy regions such that the dummy regions located adjacent to clock nets are filled with dummy metal last, thereby minimizing any timing impact on the clock nets.

Id. at col. 6 ll. 25-34.

The '807 Patent is entitled "method for making an interconnect layer and a semiconductor device including the same" and was issued on August 20, 2002. U.S. Patent

No. 6,436,807, at [45], [54] (issued Aug. 20, 2002).  The invention disclosed in the '807 Patent provides "a method for making a layout for an interconnect layer of a semiconductor device to facilitate uniformity of planarization during manufacture of the semiconductor device, wherein the method comprises the steps of determining an active interconnect feature density for each of a plurality of layout regions of the interconnect layout, and adding dummy fill features to each layout region to obtain a desired density of active interconnect features and dummy fill features to facilitate uniformity of planarization during manufacturing of the semiconductor device."  Id. at col. 2 ll. 52-62.

As an example of the invention claimed in the '807 Patent, independent claim 1 of the '807 Patent recites:

> 1. A method for making a layout for an interconnect layer of a semiconductor device to facilitate uniformity of planarization during manufacture of the semiconductor device, the method comprising the steps of:
>
> determining an active interconnect feature density for each of a plurality of layout regions of the interconnect layout; and
>
> adding dummy fill features to each layout region to obtain a desired density of active interconnect features and dummy fill features to facilitate uniformity of planarization during manufacturing of the semiconductor device, the adding comprising defining a minimum dummy fill feature lateral dimension based upon a dielectric layer deposition bias for a dielectric layer to be deposited over the interconnect layer.

Id. at col. 6 ll. 59 to col. 7 ll. 6.

On August 11, 2022, Bell Semic filed a complaint against MaxLinear, alleging a claim for infringement of the '259 Patent.  (Doc. No. 1, Compl.)  On October 27, 2022, Bell Semic filed a first amended complaint ("FAC") against MaxLinear, adding a claim for infringement of the '807 Patent.  (Doc. No. 11, FAC.)  On January 12, 2023, the Court consolidated this action with Bell Semiconductor v. NXP USA, Inc., No. 22-cv-594 (S.D. Cal, filed Apr. 27, 2022), and several other related actions for pretrial purposes.  (Doc. No. 36.)  By the present motion, MaxLinear moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Bell Semic's FAC for failure to state a claim.  (Doc. No. 14-1 at 1, 12.)

///

## Discussion

### I. Legal Standards for a Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. See Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011) (citing Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading that states a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The function of this pleading requirement is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008); see Los Angeles Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 800 (9th Cir. 2017).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must "'accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" Los Angeles Lakers, 869 F.3d at 800 (quoting AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012)). But a court need not accept "legal

conclusions" as true. Iqbal, 556 U.S. at 678. "Further, it is improper for a court to assume the claimant "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

In addition, a court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice. See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995); Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010).

## II. Plaintiff's Claims for Patent Infringement

In the FAC, Bell Semic alleges against MaxLinear: (1) a claim for infringement of the '259 Patent; and (2) a claim for infringement of the '807 Patent. (Doc. No. 11, FAC ¶¶ 39-65.) MaxLinear argues that Bell Semic's claims for patent infringement should be dismissed because the FAC fails to set forth adequate factual allegations showing that it is plausible that MaxLinear infringes the patents-in-suit. (Doc. No. 14-1 at 6-9.)

To establish infringement of a method claim, "a patentee must prove that each and every step of the method or process was performed." Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech., 709 F.3d 1348, 1362 (Fed. Cir. 2013); see Akamai Techs., Inc. v. Limelight Networks, Inc., 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc) ("Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity."); Star Sci., Inc. v. R.J. Reynolds Tobacco Co., 655 F.3d 1364, 1378 (Fed. Cir. 2011) ("To prove infringement, a plaintiff must prove the presence of each and every claim element or its equivalent in the accused method or device."). The Federal Circuit has explained that in order to assert a plausible claim for patent infringement under the Iqbal/Twombly standard, the complaint must "place the alleged infringer on notice of what activity is being accused of infringement." Bot M8 LLC v. Sony Corp. of Am., 4 F.4th 1342, 1352 (Fed. Cir. 2021) (cleaned up) (quoting Lifetime

Indus., Inc. v. Trim-Lok, Inc., 869 F.3d 1372, 1379 (Fed. Cir. 2017)).  A plausible claim for patent infringement "must do more than merely allege entitlement to relief; it must support the grounds for that entitlement with sufficient factual content."  Id.  Thus, a plaintiff cannot simply recite the claim elements and merely conclude that the accused product has those elements.  Id. at 1353.  Rather, "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim."  Id.  "The level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device."  Id.

      Nevertheless, the Federal Circuit has explained that the standard for pleading patent infringement is "not onerous" and "a plaintiff need not prove its case at the pleading stage."  Id. at 1352, 1354 (internal quotation marks omitted); see also WiTricity Corp. v. Momentum Dynamics Corp., 563 F. Supp. 3d 309, 327 (D. Del. 2021) ("'[V]ery little is required in order to plead a claim of patent infringement.'").  In addition, the Federal Circuit has specifically held that "[a] plaintiff is not required to plead infringement on an element-by-element basis."  Bot M8, 4 F.4th at 1352; see Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1350 (Fed. Cir. 2018).[2]

      Bell Semic argues that it has adequately stated claims for infringement of the patents-in-suit because the element-by-element analysis provided in its FAC "'clearly exceeds'" what is required under Rule 8(a).  (Doc. No. 15 at 8, 12 (quoting Nalco, 883 F.3d at 1350).)

---

[2]    In light of this holding in Bot M8, the Court rejects MaxLinear's citations to non-binding district court cases holding that in order to state a claim for patent infringement, a plaintiff much allege that the defendant "directly infringes each limitation in at least one asserted claim." (Doc. No. 14-1 at 5-6 (citing Scripps Rsch. Inst. v. Illumina, Inc., No. 16-CV-661 JLS (BGS), 2016 WL 6834024, at *5 (S.D. Cal. Nov. 21, 2016); N. Star Innovations Inc. v. Kingston Tech. Co., Inc., No. SACV1701833DOCDFMX, 2018 WL 3155258, at *1 (C.D. Cal. May 7, 2018)). The Court notes that both of the cited district court decisions were issued prior to the Federal Circuit's decision in Bot M8.

The Court agrees with Bell Semic. The Federal Circuit has explained that in order to state a claim for patent infringement, a plaintiff "is not required to plead infringement on an element-by-element basis." Bot M8, 4 F.4th at 1352; see Nalco, 883 F.3d at 1350. Nevertheless, Bell Semic has provided such element-by-element allegations in the FAC.

In the FAC, Bell Semic alleges that MaxLinear has directly infringed at least independent claim 1 of the '259 Patent and independent claim 1 of the '807 Patent. (Doc. No. 11, FAC ¶¶ 44, 57.) To support these allegations, the FAC sets forth the claim language for these two claims and then provides factual allegations explaining how MaxLinear performs each element of the claimed methods through its use of design tools by Cadence Design Systems, Inc. ("Cadence"), Synopsys, Inc. ("Synopsys"), and/or Siemens Digital Industries Software ("Siemens") to design its XR9240 Coprocessor chips. (Id. ¶¶ 28, 36, 44-46, 57-60.) In addition to these factual allegations in the FAC, Bell Semic has attached claim charts to its FAC containing further element-by-element analysis with citations to supporting evidence of how MaxLinear allegedly performs the claimed methods through its use of the design tools at issue. (See id. ¶¶ 46, 60; Doc. No. 11-2, FAC Ex. B; Doc. No. 11-5, FAC Ex. E.) These factual allegations in the FAC along with the supporting claim charts are more than sufficient to "place [MaxLinear] on notice of what activity is being accused of infringement." Bot M8, 4 F.4th at 1352; see, e.g., Disc Disease Sols. Inc. v. VGH Sols., Inc., 888 F.3d 1256, 1260 (Fed. Cir. 2018) (finding allegations sufficient to state claims for direct infringement of the patents-in-suit where the patentee specifically identified the infringing products and alleged those products included each and every element of at least one claim of the patents); Bell Semiconductor, LLC v. Western Digital Techs., Inc., No. 22-cv-01127-JAK-MRW, ECF No. 74 at 3-5 (C.D. Cal. Jan. 3, 2023) (finding similar allegations in a complaint by Bell Semic sufficient to state claims for direct infringement of the '259 Patent and the '807 Patent).

MaxLinear argues that Bell Semic's allegations are insufficient because they simply repeat the claim language and make conclusory unsupported statements. (Doc. No. 14-1 at 7.) The Court rejects this argument as MaxLinear's characterization of Bell Semic's

allegations is inaccurate. For example, with respect to independent claim 1 of '259 Patent, Bell Semic alleges that MaxLinear "identif[ies] free spaces on each layer of the circuit design suitable for dummy metal insertion as dummy regions" "by employing a design tool, such as at least one of the Cadence, Synopsys, and/or Siemens tools, to identify free spaces on each layer of its XR9240 chips' circuit designs suitable for dummy metal insertion as dummy regions." (Doc. No. 11, FAC ¶ 45.) These allegations are further supported by the attached claim chart for the '259 Patent explaining how the software design tools at issue can be used to identify free spaces on each layer of the circuit design suitable for dummy metal insertion as dummy regions and then asserting that MaxLinear has used the design tools in this manner to create the circuit design for its XR9240 Coprocessor chips. (Doc. No. 11-2, FAC Ex. B at 8-13.) As such, Bell Semic's allegations do not simply repeat the claim language without providing sufficient factual content. Rather, these allegations provide specific facts articulating why it is plausible that MaxLinear performs the claimed method, i.e., that MaxLinear allegedly employs the software design tools at issue to perform the method claimed in the '259 Patent to design its XR9240 chips. This is sufficient to state a claim for patent infringement. See Bot M8, 4 F.4th at 1353; Disc Disease, 888 F.3d at 1260; Bell Semiconductor, No. 22-cv-01127-JAK-MRW, ECF No. 74 at 4.

 MaxLinear argues that Bell Semic's allegations regarding the design tools are insufficient because Bell Semic does not allege which specific design tools infringe the patents-in-suit or what specific design tool was used by MaxLinear to do so. (Doc. No. 14-1 at 6-7; Doc. No. 17 at 6.) The Court rejects this argument. In the FAC, Bell Semic alleges: "On information and belief, MaxLinear employs a variety of design tools, for example, Cadence, Synopsys, and/or Siemens tools" to perform the claimed methods. (Doc. No. 11, FAC ¶¶ 44, 57.) In its attached claim charts, Bell Semic further asserts that MaxLinear is a customer of Cadence and that "[o]n information and belief, these design tools all function similarly with respect to the functionality described herein." (Doc. No. 11-2, FAC Ex. B at 1 & n.1; Doc. No. 11-5, FAC Ex. E at 1 & n.1.) The Ninth Circuit has

explained that "'[t]he Twombly plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.'" Soo Park v. Thompson, 851 F.3d 910, 928 (9th Cir. 2017) (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)); see also Concha v. London, 62 F.3d 1493, 1503 (9th Cir. 1995) ("[W]e relax pleading requirements where the relevant facts are known only to the defendant."); Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1330 (Fed. Cir. 2009) ("Pleading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control."). Bell Semic contends that information regarding which specific design tools MaxLinear employs to design its semiconductor devices lies within the sole possession and control of MaxLinear, (Doc. No. 15 at 11), and MaxLinear does not dispute this assertion. As such, Bell Semic's allegations made on information and belief regarding the design tools are sufficient to support its claims for patent infringement.[3] See Soo Park, 851 F.3d at 928; see, e.g., WiTricity, 563 F. Supp. 3d at 328 ("Although some of the allegations regarding the accused product are plead on information and belief, more detailed allegations are not required at this stage. Indeed, 'it may not be possible for a plaintiff to describe its case-in-chief with particularity at the outset of litigation, without access to the accused method, the accused apparatus for reverse engineering, or confidential data such as source code.'").

In addition, MaxLinear argues that Bell Semic's allegations are insufficient because Bell Semic does not allege whether MaxLinear's XR9240 Coprocessor chips "actually has

---

[3] MaxLinear notes that pleading allegations based on information and belief is only permitted "'if the pleading sets forth the specific facts upon which the belief is reasonably based." (Doc. No. 14-1 at 12 (citing Exergen, 575 F.3d at 1330).) But, here, Bell Semic asserts that MaxLinear is a customer of at least Cadence and cites to evidence in support of that assertion. (Doc. No. 11-2, FAC Ex. B at 1 n.1; Doc. No. 11-5, FAC Ex. E at 1 n.1.) As such, Bell Semic has provided the specific facts upon which its belief is reasonably based.

any dummy metal, any dummy regions located adjacent to clock nets, or that it was designed or fabricated by prioritizing the fill of any dummy regions." (Doc. No. 14-1 at 7, 8.) The Court rejects this argument as it fails to recognize that the two claims at issue are method claims. See '259 Patent col. 6 ll. 25-34; '807 Patent col. 6 ll. 59 to col. 7 ll. 6. To establish infringement of a method claim, "a patentee must prove that each and every step of the method or process was performed" by the accused infringer. Aristocrat, 709 F.3d at 1362; see Akamai, 797 F.3d at 1022. As such, Bell Semic's infringement allegations properly focus on MaxLinear's alleged performance of the claimed methods through its use of the design tools at issue to design its XR9240 Coprocessor chips rather than the features of MaxLinear's completed semiconductor chips.[4]

Finally, MaxLinear notes that neither Bell Semic nor its technical expert have inspected or reverse engineered MaxLinear's device. (Doc. No. 17 at 9.) But "reverse engineering or review of non-public information is not necessary to put Defendant on notice of the infringement allegations." Bell Semiconductor, No. 22-cv-01127-JAK-MRW, ECF No. 74 at 4.

In sum, Bell Semic has adequately stated claims for direct infringement of the patents-in-suit.[5] As such, the Court denies MaxLinear's motion to dismiss Bell Semic's

---

[4] Indeed, in its motion to dismiss, MaxLinear contends that to properly plead infringement of claim 1 of the '259 Patent, Bell Semic must "plead[] facts regarding the manner in which MaxLinear prioritizes the order in which 'dummy metal' is assigned to 'dummy regions' during the circuit design process employed by MaxLinear." (Doc. No. 14-1 at 3.) Here, MaxLinear recognizes that in order to properly state a claim for infringement of the '259 Patent, Bell Semic's allegations need to focus on MaxLinear's actions during the circuit design process.

[5] In its opposition brief, Bell Semic states that it does not "oppose dismissing its claims for indirect infringement without prejudice." (Doc. No. 15 at 8 n.1.) The Court notes that Bell Semic's FAC in this case only alleges claims for direct infringement of the patents-in-suit and does not appear to allege any claims for indirect infringement. (See, e.g., Doc. No. 11, FAC ¶¶ 43, 48, 56, 62.) As such, the Court declines to dismiss any claims for indirect infringement as there are no indirect infringement claims to dismiss.

claims for patent infringement.[6]

## Conclusion

For the reasons above, the Court denies Defendant MaxLinear's Rule 12(b)(6) motion to dismiss. MaxLinear must file an answer to Plaintiff Bell Semic's first amended complaint **within fourteen (14) days from the date this order is filed**. See Fed. R. Civ. P. 12(a)(4)(A). The answer should be filed in both the original case (Case No. 22-cv-1178) and the lead case (Case No. 22-cv-594). All other future filings shall be made in the lead case (Case No. 22-cv-594) absent further order of the Court.

**IT IS SO ORDERED.**

DATED: January 12, 2023

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

[6] In its briefing, MaxLinear argues that the declaration from Bell Semic's technical expert, Dr. Linder, attached as Exhibit C to the FAC is improper and should not be considered by the Court for purposes of deciding a Rule 12(b)(6) motion to dismiss. (Doc. No. 14-1 at 9-10; Doc. No. 17 at 2-3.) Because the Court does not cite to or rely in any way on the Linder declaration in deciding MaxLinear's Rule 12(b)(6) motion to dismiss, MaxLinear's challenges to the Linder declaration for purposes of its Rule 12(b)(6) motion to dismiss are moot, and the Court declines to address them.